J-S58016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF J.M.

APPEAL OF: C.T., BIOLOGICAL MOTHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 897 MDA 2015

Appeal from the Decree entered April 27, 2015,
in the Court of Common Pleas of Union County, Orphans' Court
Division, at No(s): CP-60-OC-008061-2014

BEFORE:  GANTMAN, P.J., OLSON, and PLATT*, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 05, 2015**

Appellant, C.T., (hereinafter "Mother") appeals from the decree dated December 11, 2014, and entered on April 27, 2015, in the Court of Common Pleas of Union County Orphans' Court, terminating Mother's parental rights to J.M. (born in December 2004) (hereinafter "Child").[1]  We affirm.

Since 2012, Lycoming County Children and Youth Services has been involved with this family due to Mother's neglect of the children, homelessness, and mental health issues.  Child has two half-sisters who

_____

* Retired Senior Judge assigned to the Superior Court.

[1] At the conclusion of the termination hearing on December 11, 2014, the Honorable Michael H. Sholley directed Mother and Child's father, J.B. (hereinafter "Father"), to submit findings of fact and conclusions of law on or before January 31, 2015.  N.T. Hearing, 12/11/14, at 116-117.  Mother and Father filed their proposed findings of fact and conclusions of law on February 2, 2015.  The trial court then entered its decree, dated December 11, 2014, on April 27, 2015, terminating the parental rights of Mother and Father to Child.  Father is not a party to this appeal, nor has he filed a separate appeal from the termination of his parental rights.

were born in July 2008 and October 2010, respectively.[2] Mother moved to Union County in January 2014. On March 18, 2014, Lycoming County Children and Youth Services notified Union County Children and Youth Services (hereinafter "CYS") that Mother relocated to Union County, Pennsylvania. On April 1, 2014, CYS filed a dependency petition and sought to remove Child from Mother's home.

On May 27, 2014, following a dependency hearing, the trial court adjudicated Child dependent and placed Child in foster care with foster parents. On May 28, 2014, Mother signed a Child Permanency Plan (hereinafter "CPP"). The CPP directed Mother to: (1) secure and maintain stable housing; (2) work on establishing a healthy parent-child relationship; (3) address Mother's mental health issues; (4) provide for Child's basic needs; and, (5) obtain employment. The CPP further provided Mother visitation with Child for no less than one hour for once a week. In June 2014, Mother relocated to Philadelphia. Mother appeared in person at both the shelter care hearing and dependency hearing. Subsequent to that, Mother failed to appear for three hearings.

On October 17, 2014, CYS filed a petition to involuntarily terminate Mother's parental rights to Child. On December 11, 2014, the trial court held a hearing on the termination petition. Mother did not appear at the

_____

[2] On December 29, 2014, Mother's parental rights to Child's half-sisters were terminated.

termination hearing. Further, Mother did not appear at her prior, scheduled sessions with the bonding evaluator, licensed psychologist Robert Meacham, Ph.D.

The following individuals testified at the termination hearing: Dr. Meacham; Crystal Minnier, a Lycoming County Children and Youth Services caseworker; A.B., Child's foster mother; and, Aimee Benfer, a Union County CYS caseworker. On April 27, 2015, the trial court entered its decree terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b).

On May 19, 2015, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Mother raises the following issues:

1. Should the [t]rial [c]ourt have denied termination and ruled [CYS's] petition under 23 Pa.C.S.A. section 2511(a)(1) failed as there was no showing of a settled purpose to relinquish a parental claim, and Mother's contact with Child in May 2014 rebutted the notion of a refusal or failure to perform parental duties within six months of the October 2014 filing?

2. Should the [t]rial [c]ourt have denied termination and ruled [CYS's] petition under 23 Pa.C.S.A. section 2511(a)(2) failed as [CYS], in not conceding that Mother's negative mental health issues were a primary factor, and not offering any other evidence as to the condition and cause of her negative behavior, therefore, could not and did not state that the conditions and causes of the alleged misbehavior could not or would not be remedied as is required under the statute?

3. Should the [t]rial [c]ourt have denied termination and ruled [CYS's] petition under 23 Pa.C.S.A. section 2511(a)(5) failed as [CYS's] decision to refuse further offers of transportation to Mother rendered their hands unclean and voided their

argument that services reasonably available to a parent were not likely to remedy conditions, as is noted under the statute?

Mother's Brief at 5.

Our standard of review regarding orders terminating parental rights is

as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the

burden is upon the petitioner to prove by clear and convincing evidence that

the asserted grounds for seeking the termination of parental rights are valid.

*Id.* at 806. We have previously stated:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence

presented and is likewise free to make all credibility determinations and

resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa.

Super. 2004). If competent evidence supports the trial court's findings, we

will affirm even if the record could also support the opposite result.  ***In re Adoption of T.B.B.,*** 835 A.2d 387, 394 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a).  ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).  Here, we will focus on section 2511(a)(2).

Section 2511 provides, in relevant part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have stated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citations omitted).

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."[].
>
> This Court has addressed incapacity sufficient for termination under § 2511(a)(2):
>
>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 515 A.2d 883, 891 (Pa. 1986), *quoting In re: William L.*, 383 A.2d 1228, 1239 (Pa. 1978).

*In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012).

We find the following portion of the trial court's opinion relevant to our inquiry with regard to section 2511(a)(2).

> [Mother] failed to maintain contact with [CYS] and failed to provide accurate information regarding her housing, employment status, or [her] mental health treatment. [Mother] failed to show up for a mental health evaluation [with CYS], although she did obtain one from Lycoming County. [Mother] would obtain employment and then promptly lose her job for not showing up to work.
>
> [M]other's contact with [CYS] has been sporadic since her relocation to Philadelphia with the last contact being on October 16, 2014.
>
> Although [M]other has attempted to maintain contact with her daughters, she has not made any significant effort to maintain contact with [C]hild. Her last visit with [C]hild was May 2, 2014. The last telephone contact with [C]hild and [M]other was on June 30, 2014. [] Mother failed to appear for parenting session with Children and Youth or the Families Learning Together program.
>
> Essentially, [M]other has made absolutely no effort to maintain any type of relationship with [C]hild nor has she made any effort to comply with any of the requirements of the CPP.

Trial Court Opinion, 4/27/15, at 3-4.

Ms. Minnier testified that Mother "never made any progress in any aspect of her situation." N.T. Hearing, 12/11/14, at 34. Specifically, Ms. Minnier testified that: Mother continues to be homeless and does not participate in any of her parenting classes; Mother's mental health issues remain a concern, including auditory hallucinations and depression; and, Mother never followed through with counseling. *Id.* at 34-36.

Ms. Benfer testified that Mother did not complete her permanency plan goals including: Mother did not provide Ms. Benfer with any information as to her housing; Mother did not obtain housing free of health and safety issues; Mother did not address her mental health needs or keep her mental health appointments; Mother did not provide for Child's basic needs; and, Mother did not attend parenting sessions. *Id.* at 82-86. Ms. Benfer further testified that Mother only had one visit with Child – on May 2, 2014.

The trial court found clear and convincing evidence in the record that the repeated and continued incapacity, abuse, neglect or refusal of the Mother had caused Child to be without essential parental care, control or subsistence necessary for his physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the Mother. Trial Court Opinion, 4/27/15, at 2-4.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340. Instantly, the evidence showed that Mother has not made any effort to maintain any type of relationship with Child and Mother has not made any effort to comply with any of the CPP requirements. Trial Court Opinion, 4/27/15, at 4. The evidence also demonstrated that

Mother's continued incapacity, abuse, neglect or refusal to parent could not or would not be remedied, despite CYS's offering of reasonable efforts to assist in her reunification with Child.

Mother's argument regarding section 2511(a)(2) essentially asks this Court to make credibility and weight determinations different from those of the trial court. While Mother may claim to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). We stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of [her] child is converted, upon the failure to fulfill [] her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re M.G.*, 855 A.2d at 73-74. Accordingly, we find that the trial court's determinations regarding section 2511(a)(2) are supported by sufficient, competent evidence in the record.

The trial court must also consider how terminating Mother's parental rights would affect the needs and welfare of Child pursuant to 23 Pa.C.S.A.

§ 2511(b). Pursuant to section 2511(b), the trial court's inquiry is specifically directed to a consideration of whether termination of parental rights would best serve the developmental, physical, and emotional needs of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). We have instructed that the court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *See id.*

While Mother did not contest section 2511(b) on her appeal, we will still review whether termination of parental rights would best serve the developmental, physical, and emotional needs of Child. The trial court found:

> [C]hild has been placed in the pre-adoptive home of [the foster parents]. [C]hild is thriving in this home and refers to his foster parents as "Mom" and "Dad." [Foster father] coached [C]hild in football, a topic which [C]hild seems extremely proud of. [C]hild's two younger siblings are placed in the [foster parents'] home and proceedings for the [foster parents] to adopt the siblings are in progress. The [foster parents] have indicated a desire to adopt [C]hild and have repeatedly demonstrated a vested interest in [C]hild's well-being.
>
> [C]hild is improving substantially in school and socially. The [trial c]ourt has had the opportunity to observe [C]hild in court and has observed a close bond between [C]hild and the [foster parents]. The relationship between [C]hild and the [foster parents] is warm, affectionate, and encouraging. The [trial c]ourt has had an opportunity to observe [C]hild with the [foster parents'] biological son who is approximately the same age and

- 10 -

the two engage freely and openly and appear to have already formed a bond as siblings.

Trial Court Opinion, 4/27/15 at 4-5.

Dr. Meacham testified that Child "is doing well in the foster home" and Child "views the foster family as his family." N.T. Hearing, 12/11/14 at 13. Ms. Minnier testified that the foster parents provide excellent care for Child, and that Child is very comfortable and very happy with them. *Id.* at 38. Ms. Benfer testified that Child has bonded with his foster parents, and that Child refers to them as "mom and dad." *Id.* at 80.

In the instant case, on the issue of bonding, our review of the record reveals no evidence of a bond between Mother and Child. Dr. Meacham testified that, when he talked to Child about Mother, "Child immediately became glum." *Id.* at 13. Ms. Benfer testified that she witnessed Mother and Child's one visit together, and testified that the visit was "like watching two friends play." *Id.* at 97. Ms. Benfer also testified that Mother did not exhibit that she missed Child. *Id.* at 98. Dr. Meacham testified that Child knows who Mother is, but Child is disappointed that Mother is not active in Child's life. *Id.* at 25. Moreover, Dr. Meacham testified that re-introducing Mother into Child's life would have a traumatic impact on Child, and would put Child's "relationships in life in a very tenuous hold." *Id.* at 25-26. We have stated, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

After this Court's careful review of the record, we find that the competent evidence in the record supports the trial court's determination that there is no bond between Mother and Child which, if severed, would be detrimental to Child, and that the termination of Mother's parental rights would best serve the needs and welfare of Child. Thus, we will not disturb the trial court's determinations. *See In re M.G.*, 855 A.2d at 73-74.

After a careful review, we affirm the decree terminating Mother's parental rights on the basis of section 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/2015